557 So.2d 796 (1990)
Jessie Lee STRINGER, Jr.
v.
STATE of Mississippi.
No. 07-KA-59146.
Supreme Court of Mississippi.
February 21, 1990.
Mark E. McLeod, Jackson, for appellant.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
This criminal appeal addresses the sufficiency of the proof of possession of a controlled substance with intent to distribute. Holding that the intent to distribute the controlled substance was not proved, nor that the circumstances indicate such an intent, this Court remands for appropriate sentencing on the lesser included offense of possession of the controlled substance.
Jessie Lee Stringer was indicted on one count of possession of a controlled substance, pentazocine, with intent to distribute. He was convicted in the Circuit Court of Hinds County by a jury and sentenced to a term of five (5) years in the custody of the Mississippi Department of Corrections. He was also ordered to pay a fine in the amount of one thousand dollars ($1,000.00).
Feeling aggrieved by the judgment below, Stringer appeals to this Court and raises only one issue:
Whether there was sufficient evidence of an intent to distribute to warrant the lower court's overruling the defendant's motion to dismiss.

I.
On the 13th day of August, 1987, appellant Jessie Lee Stringer, Jr., went to the Dairy Bar, in Jackson, Mississippi, to have a few drinks and to play pool.
On that same date, at sometime prior to twelve o'clock noon, two undercover police officers were in the area of the Dairy Bar, to "investigate narcotic activity". A confidential informant was sent into the Dairy Bar for the specific reason of buying drugs from the appellant. The appellant refused to sell the confidential informant anything, and the confidential informant went back to the undercover officers empty handed. At approximately two fifteen o'clock p.m., the officers entered the Dairy Bar looking for the appellant. Upon entering the building the officers located the appellant sitting alone.
*797 Appellant was subsequently arrested and a search of the area disclosed a small snuff can, containing twenty one sets of T's and Blues, which the officers attributed to Stringer's ownership.

II.
The defendant's sole argument is "that the lower court erred when it overruled defendant's motion to dismiss after the State rested." The defendant's motion to dismiss was in reality a motion for directed verdict made at the close of the State's case in chief, and as such, challenged the legal sufficiency of the evidence offered to that point of the trial to sustain a guilty verdict.
Following the denial of his motion for directed verdict, Stringer proceeded to offer evidence in his defense. Consequently, Stringer has waived this assignment of error. "To do otherwise requires the heart of a gambler and nerves of steel, yet to go forward with the evidence waives this assignment of error." Whitehurst v. State, 540 So.2d 1319, 1327 (Miss. 1989); quoting Stever v. State, 503 So.2d 227, 230 (Miss. 1987); accord Ruffin v. State, 481 So.2d 312, 316 (Miss. 1985); Clements v. Young, 481 So.2d 263, 268-69 (Miss. 1985); Tigner v. State, 478 So.2d 293, 294 (Miss. 1985); Ellis v. State, 469 So.2d 1256, 1260 (Miss. 1985); Shavers v. State, 455 So.2d 1299, 1302 (Miss. 1984); Rainer v. State, 438 So.2d 290, 292 (Miss. 1983); Tubbs v. State, 402 So.2d 830, 835 (Miss. 1981).
In a technical sense, Stringer waived his right to challenge the sufficiency of the evidence. By going forward with his case, Stringer "lost the procedural right to [challenge the sufficiency of the evidence] by restricting this Court's view only to that evidence offered by [the State] as a part of [its] case in chief." However, "... the waiver rule here does not mean that [Stringer] has waived his right to challenge the weight or sufficiency of the evidence to sustain the judgment against him." Clements, supra, at 268. Clements v. Young, 481 So.2d 263, 268 (Miss. 1985). See Wetz v. State, 503 So.2d 803, 807-08 n. 3 (Miss. 1987) (restating the waiver rule). Therefore this Court considers the sufficiency of the evidence point on the basis of all the evidence offered.

III.
Stringer's argument has two components: (1) the drugs were never admitted into evidence, thus negating the element of possession, and (2) there was no proof of intent to distribute.
As to the first point, the drugs were in fact offered and admitted into evidence during the testimony of the State's expert witness. Transcript at 106. The State's expert identified the yellow tablets as pentazocine, a Schedule 2 Controlled Substance. Since the record does not support the defendant's assertions, the Court finds no merit to this portion of the assignment.
As to the second point, the defendant asserted by his testimony that the substances were in a trash box and did not belong to him. This disputed issue was resolved by the jury. In addition to this argument, however, he asserts that conceding the possession argument, which he doesn't, the State failed to prove intent to distribute the substance. Possession of the substances could infer possession for personal use, just as well as possession for purposes of intent to deliver to another person.
This Court has held that intent to distribute can be proved by "possession of a large quantity of a controlled substance which by size was far more than a person might reasonably hold for exclusive personal use." Boches v. State, 506 So.2d 254, 260 (Miss. 1987). "Additional incriminating evidence indicating some type of involvement in the drug trade" is also relevant on the issue of intent to distribute. Id.
The evidence offered by the State in this case revealed the following: Stringer had in his possession 21 sets of what are commonly known as T's and Blues. Each set constitutes one dose, and costs anywhere from $15 to $20 a set. The average user of this drug consumes one to three sets a day, but an addict could consume more than three sets a day. One officer testified that *798 he knew of addicts who consumed five to six sets a day. Therefore, Stringer had in his possession what would be a week's supply for the average user, but only a few days supply for an addict. Furthermore, the sets were packaged individually. Each set was wrapped in aluminum foil which is the way in which they are normally packaged for sale. By the same token, however, this is the way T's and Blues are purchased for personal consumption. No sale was proved on this date in question by the undercover agents.
Moreover, these drugs are taken intravenously, yet Stringer had no syringes on his person with which to take these drugs. The area in which Stringer was found was a known drug trafficking area, an area in which Stringer had been seen many times before. And finally, one of the arresting officers, experienced in the area of narcotics enforcement, testified that of the many T's and Blues related arrests he has made in the past, more suspects than not carried less than twenty sets. He could not, however, provide an average figure.
Viewing this evidence, as this Court must, in the light most favorable to the State's theory of the case, together with all reasonable inferences which can be drawn therefrom, it is this Court's opinion that no reasonable juror could find beyond a reasonable doubt that Stringer possessed these drugs with the intent to distribute them. The verdict in this case as to intent to distribute is irreconcilable with this Court's holdings to the contrary in Hollingsworth v. State, 392 So.2d 515 (Miss. 1981) and Bryant v. State, 427 So.2d 131 (Miss. 1983).
In Hollingsworth, the defendant was found in possession of two bags of marijuana totalling more than one ounce along with certain paraphernalia, to-wit, a leather bag, scales and a box of plastic bags. In discussing the sufficiency of this evidence to prove intent to distribute, this Court stated that "possession of the articles mentioned could just as well infer possession for personal use as intent to deliver the contraband to another person." 392 So.2d at 518. Accordingly, this Court remanded for resentencing for possession only. Id.
In Bryant, the defendant was arrested outside a bar, patted down, and found to be in possession of 55.75 methaqualone tablets and 85.5 diazepam tablets, both controlled substances. 427 So.2d at 132. Applying Hollingsworth, this Court reversed as to intent to deliver, stating en route:
In reversing the conviction as intent to deliver, we point out that the proof was totally lacking as to any sale, attempted sale, or anything suggestive of any intent to deliver. Upon the record one may ask: Had the defendant purchased the substances just prior to his arrest for his own personal use? Was he addicted to the extent that the quantity he possessed did not exceed that which he himself would consume within reasonable time limits? No proof was offered by the state with regard to any of the foregoing questions or to any facts sufficient to establish beyond a reasonable doubt that the defendant had intent to deliver. At most the proof established no more than a mere suspicion of such intent. Therefore, the trial court erred in allowing the "intent" issue to go to the jury after the defendant requested a directed verdict and peremptory instruction. As in Hollingsworth, any inference flowing from defendant Bryant's possession could infer possession for personal use just as strongly as it could infer intent to deliver.
427 So.2d at 132-33.
Also, the State's proof was unequivocal in establishing that no sale or attempted sale took place. The testimony proved that a confidential informant called one of the officers around 12:00 noon on the day in question to inform that Stringer was at the Dairy Bar in possession of T's and Blues. The officers met with the informant around 2:00 p.m. and sent him back to the Dairy Bar to try and make a buy from Stringer. The officers watched the confidential informer enter the Dairy Bar and return a few minutes later with the news that no sale had occurred or even been attempted, but that Stringer was inside in possession *799 of T's and Blues. Acting on the informer's description of Stringer and the drug container (a snuff can), the officers entered the Dairy Bar, confiscated the drugs and arrested Stringer.
No single factor or combination of factors shown here by the State's evidence is sufficient to establish beyond a reasonable doubt that Stringer possessed pentazocine with the intent to sell it, the State's argument to the contrary notwithstanding.

IV.
This Court reverses the defendant's conviction of possession of a controlled substance with intent to distribute, but affirms a conviction for the lesser included offense of possession. Remand is ordered for proper sentencing for possession of the controlled substance, not inconsistent with this opinion.
REVERSED AS TO CONVICTION OF POSSESSION WITH INTENT TO DELIVER; AFFIRMED AS TO CONVICTION AS TO POSSESSION OF A CONTROLLED SUBSTANCE, AND REMANDED FOR RESENTENCING ON POSSESSION CHARGE ONLY.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ANDERSON, J., dissents without written opinion.