588 So.2d 438 (1991)
Michael STRINGFIELD
v.
STATE of Mississippi.
No. 90-KA-0063.
Supreme Court of Mississippi.
October 23, 1991.
George S. Shaddock, Pascagoula, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and BANKS, JJ.
HAWKINS, Presiding Justice, for the court:
Michael Stringfield was convicted in the circuit court of Jackson County of possessing cocaine with the felonious intent to distribute, in violation of Miss. Code Ann. § 41-29-139(a)(1) (Supp. 1989) and sentenced to thirteen years imprisonment. Upon appeal he assigns several errors, none of which requires discussion, except the lack of evidence to prove he intended to distribute the cocaine. This assignment has merit, and we reverse for resentencing. Only those facts relevant to our decision will be set out.

FACTS
Stringfield had some cocaine in powder form. According to him, it had been given to him, in addition to a payment of $100, for driving an acquaintance to New Orleans.
*439 Stringfield asked Cedrick D. Fairley if he knew anyone who could prepare the cocaine into rock form. Fairley did, and together on January 24, 1989, in Stringfield's car they went to a man in Jackson County called "Bug," who performed the task. Stringfield gave "Bug" a portion of the finished product and Fairley a portion.
On their way back to their respective residences, the car was stopped and Stringfield arrested on another charge. At the police station Stringfield was bodily searched, and in his groin area Pascagoula Patrolman Joe Sellers found a bag containing Stringfield's rock cocaine.
The narcotics division of the Mississippi Crime Laboratory weighed the rock cocaine found on Stringfield at fourteen grams, which is not quite half an ounce.[1] On cross-examination Stringfield estimated that the supply he possessed would last about four days.
Stringfield and Fairley were indicted by the Jackson County grand jury on February 13 of felonious possession with felonious intent to distribute cocaine, a Schedule II controlled substance.
Fairley pleaded guilty to simple possession of cocaine and testified as a witness for the State. Stringfield, while admitting that he possessed the cocaine, testified throughout that he had it for his own personal use, and did not intend to sell or distribute it. Stringfield had never been convicted of any crime at the time of his trial.
The jury found Stringfield guilty as charged, and he has appealed.

LAW
The grand jury did not indict Stringfield for the distribution of cocaine. He was not charged with any crime insofar as his actual delivery to "Bug" or Fairley of any of his rock cocaine. Instead, Stringfield was charged with the felonious intent to distribute the rock cocaine found on his person in the police station. It was that time and that place upon which the indictment was based. Had the possession with intent to distribute been based upon his possession at "Bug's" residence, we would still have a troublesome question: whether a person who gives his friends some cocaine from his supply thereby possesses cocaine with an intent to distribute. If a smoker gives an acquaintance a few cigarettes from his package, or a pack from his carton, does that mean he possessed the tobacco with an intent to distribute? Clearly he is guilty of actually distributing the tobacco he gives his friend, but does this mean he possessed the pack, or carton, with an intent to sell or distribute? That question, however, must wait another day for an answer, because  while almost  it is not quite presented here.
Instead, the question is whether Stringfield possessed the rock cocaine found on his person at the police station with an intent to distribute it? It was incumbent upon the State to prove this intent beyond every reasonable doubt.
The Uniform Controlled Substances Law, Miss. Code Ann. § 41-29-101, et seq., (Supp. 1991) encompasses this State's laws dealing with the manufacture, sale, distribution and possession of drugs under five categories called "schedules." Miss. Code Ann. § 41-29-115 lists a great number of drugs under Schedule II, of which cocaine is one. Miss. Code Ann. § 41-29-115(a)(4).
Miss. Code Ann. § 41-29-139 sets out prohibited acts and penalties, including the following applicable provisions:
§ 41-29-139. Prohibited acts; penalties.
(a) Except as authorized by this article, it is unlawful for any person knowingly or intentionally:
(1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance; or
.....
(b) Except as otherwise provided in subsection (f) of this section or in Section *440 XX-XX-XXX, any person who violates subsection (a) of this section shall be sentenced as follows:
(1) In the case of controlled substances classified in Schedule I or II, as set out in Sections 41-29-113 and 41-29-115, ... such person may, upon conviction, be imprisoned for not more than thirty (30) years and shall be fined not less than One Thousand Dollars ($1,000.00) nor more than One Million Dollars ($1,000,000.00) or both;
.....
(c) It is unlawful for any person knowingly or intentionally to possess any controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this article.
Any person who violates this subsection with respect to:
(1) A controlled substance classified in Schedule I or II, as set out in Sections 41-29-113 and 41-29-115, except marihuana, is guilty of a felony and upon conviction may be imprisoned for not more than three (3) years and shall be fined not less than One Thousand Dollars ($1,000.00) nor more than Thirty Thousand Dollars ($30,000.00) or both;
There is a vast difference  27 years and $970,000  between the maximum penalty for possession and the maximum penalty for the distribution or sale of cocaine. There is, of course, a very good reason for the difference in severity of sentence between a user and a peddler of cocaine, the latter posing a threat to society, the former a threat to himself.
It is also important to note that the statute imposes the identical penalty for possession with intent to distribute or sell cocaine, namely: up to 30 years and a $1,000,000 fine, as it does for the actual acts of distributing or selling.
It therefore follows that proof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion. There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant did in actual fact intend to distribute or sell the cocaine, not that he might have such intent. It must be evidence in which a reasonable jury can sink its teeth.
Unfortunately for the defendant caught possessing cocaine, he goes before the jury already guilty of a felony. The jurors are not sympathetic with him to begin with. The prosecution has an easy job of persuading the jury to make a leap of faith from possession to possession with intent to distribute.[2] Yet neither the circuit judge nor this Court can permit a mental leap of a criminal intent to distribute or sell in the absence of clear evidence of such intent. While the jury might not catch it, the experienced circuit judge must. Indeed, this very danger requires the circuit judge to be specially vigilant in order to avert a miscarriage of justice.
The difference in this case meant ten more years added to Stringfield's sentence than the maximum three years authorized under Miss. Code Ann. § 41-29-139(c)(1) for possession of cocaine.
*441 What was there about this case to reasonably convince a jury that Stringfield intended to distribute the cocaine? By his own estimate, he had enough for four days' personal consumption, but this has little significance. We are confident that law enforcement officers endeavor to make cocaine as difficult and risky to buy and possess as they possibly can. That a cocaine user would not wish to expose himself to arrest by going out and buying cocaine for at least four days does not strike us as an unusual precaution. See Stringer v. State, 557 So.2d 796, 797-98 (Miss. 1990); Boches v. State, 506 So.2d 254, 260 (Miss. 1987); Bryant v. State, 427 So.2d 131, 132 (Miss. 1983); Hollingsworth v. State, 392 So.2d 515, 518 (Miss. 1981); Applegate v. State, 301 So.2d 853 (Miss. 1974).
It is certainly correct that a criminal intent may, and ordinarily can only be shown by surrounding circumstances. Shive v. State, 507 So.2d 898, 900 (Miss. 1987); Boches, 506 So.2d at 260; Fisher v. State, 481 So.2d 203, 213 (Miss. 1985); Hollingsworth, 392 So.2d at 517-18; Stinson v. State, 375 So.2d 235, 236 (Miss. 1979); Ryals v. State, 305 So.2d 354, 356 (Miss. 1974); Shanklin v. State, 290 So.2d 625, 627 (Miss. 1974). The trouble here is there are no surrounding circumstances from which such an intent may be inferred.
We accordingly affirm on the lesser included offense of possession of cocaine, and remand for resentencing under Miss. Code Ann. § 41-29-139(c)(1).
AFFIRMED AS TO POSSESSION OF COCAINE; REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION AS TO SENTENCING.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] One ounce equals 28.35 grams.
[2] A defendant found in possession of a controlled substance yet denying he intended to sell or distribute it is analogous to the defense of entrapment.

Supply-and-buy has great potential for abuse. The accused is put in a position where he may only plead entrapment, where he must admit the underlying criminal act, deny a disposed (and subjective) state of mind and open up his entire life as the prosecution litigates predisposition, virtually assuring that the jury will never acquit the guilty and few, if any of the innocent. Supply-and-buy strips the accused of important protections our law would otherwise afford him, viz. that he stand trial for the offense charged in the indictment and for that alone. It thus vests in the Bureau of Narcotics great power to decide who is guilty and to set up its mark so that he is without practical chance for acquittal. This is not where the constitution puts the power to decide guilt or innocence.
Tanner v. State, 566 So.2d 1246, 1249 (Miss. 1990)